IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 11-1219 (Consolidated with No. 11-1222)**
_____

SPIRIT AIRLINES, INC., *et al.*,

*Petitioners*,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,

*Respondent.*
_____

**MOTION FOR STAY BY PROSPECTIVE
INTERVENOR SOUTHWEST AIRLINES CO.**
_____

Pursuant to Rules 18 and 27, Fed. R. App. P., and Circuit Rules 18 and 27,

Southwest Airlines Co. ("Southwest")[1] – which timely filed a pending unopposed

motion to intervene in this case – moves for an order staying the effective date of

the new "full fare" airline price advertising rule (the "Full Fare Advertising Rule")

of respondent U.S. Department of Transportation ("DOT")[2] pending judicial

_____

[1]Southwest also files this Motion on behalf of its wholly-owned subsidiary,
AirTran Airways, Inc.

[2]The Full Fare Advertising Rule is part of DOT's final rule on "Enhancing Airline
Passenger Protections," 76 Fed. Reg. 23,110 (April 25, 2011), DOT Docket OST-
2010-1040, Exhibit 1 hereto.

review by this Court.[3]  The new Rule reverses 25 years of established DOT policy and airline industry practice, under which airlines are permitted to disclose applicable government-imposed taxes and fees separately from advertised air fares.

The airlines challenging the Full Fare Advertising Rule are likely to succeed on the merits of their challenge.[4]  First, the Rule is arbitrary and capricious because it: (a) is based on unfounded speculation and conjecture that consumers are confused or deceived by the decades-old practice which DOT has repeatedly reaffirmed; and (b) improperly prohibits airlines from informing consumers of government taxes in a conspicuous way that will ensure that the consumer will easily see and understand the taxes they are charged.  Second, the Rule violates the airlines' First Amendment free-speech rights because DOT has failed to demonstrate that its prohibition against the separate and conspicuous disclosure of government charges is necessary to prevent consumer confusion or deception.

Southwest will be significantly and irreparably harmed without a stay.  As set forth in the "Declaration of Dave Ridley" ("Ridley Decl.", Exhibit 4 hereto) and Mr. Ridley's "Supplemental Declaration" (Exhibit 5 hereto), absent a stay,

---

[3]Prior to filing this Motion, Southwest requested that DOT agree to stay the Rule pending judicial review.  Exhibit 2 hereto.  On July 20, 2011, DOT denied Southwest's request.  Exhibit 3 hereto.

[4]This includes petitioners Spirit Airlines, Inc. and Allegiant Air, LLC, in addition to Southwest.

Southwest will incur up to $30 million in compliance costs and lost revenue from having to implement the Rule – sums which cannot be recovered even if the Court ultimately vacates the Rule.  In contrast, no harm will be caused to any other party if the status quo is maintained and the decades-long policy remains in place pending the outcome of this Court's review of the Rule.   Moreover, a stay would avoid the likely consumer confusion caused by successive changes in airline price advertising policies that would occur if the new Rule becomes effective but is subsequently set aside by the Court.

## STATEMENT OF FACTS

Since at least 1985 DOT has followed a policy of allowing airlines to advertise air fares in a manner that separately discloses most government-imposed taxes and fees, provided that the airlines "clearly indicate[] the existence and amount of these charges so that consumers can easily calculate the total fare."[5]

Under this long-standing DOT policy the only government charge that airlines must include in advertised air fares is the 7.5% federal excise tax.  All other applicable government taxes and fees – including airport passenger facility

---

[5]70 Fed. Reg. 73,960, 73,961 (Dec. 14, 2005), Exhibit 6 hereto; *see* Order 85-12-68, 1985 WL 57876 (Dec. 24, 1985); Order 88-3-25, 1988 WL 23880 (Mar. 10, 1988); Order 88-8-2, 1988 WL 239123 (Aug. 1, 1988).  This policy has been a long-standing exception to the language in 14 C.F.R. 399.84 that fare advertisements must state the entire price of the advertised air transportation.  70 Fed. Reg. at 73,961.

charges up to $9 per one-way trip, the federal excise tax of $3.70 per segment travelled, federal September 11th security fees up to $5 per one-way trip, and up to $33 in taxes on international air travel – may be excluded from the advertised fare as long as they are clearly disclosed to consumers along with the advertised fares prior to tickets being purchased.[6]  DOT has repeatedly touted the benefits of this policy to the public.  For example, in 1988 DOT stated that:

> Separate listing of [government] charges is not deceptive, because it informs consumers of the exact amount that will be collected and passed on to the government.  The carrier retains no part of these charges.  Not only is separate listing of these charges not deceptive, but we believe that passengers benefit from knowing how much they are paying government entities apart from the fares they pay the carriers.[7]

In 2005, DOT reaffirmed that there were a "number of advantages in continuing this practice and codifying it."[8]   DOT also stated that listing government taxes and fees taxes separately "enables consumers to determine the maximum fare being advertised with ease: they need only add the broken-out charges to the advertised fare," and informs consumers "how much of their fares go to government entities and how much to the carrier."[9]  The following year DOT declared that it found "the reasons for maintaining the status quo to be most

---

[6]Ridley Decl. ¶ 3.

[7]DOT Order 88-8-2, 1988 WL 239123, at *2.

[8]70 Fed. Reg. 73,960, Exhibit 6.

[9]*Id*. at 73,963.

compelling" because it "protects consumers, facilitates price comparison, fosters fare competition, and affords sellers an appropriate degree of freedom to innovate."[10]

However, last year DOT proposed rescinding its long-established policy and instead requiring airlines to "include all mandatory fees in the advertised price."[11] Although DOT claimed this about-face was necessary to "ensure that consumers are not be [sic] deceived or confused about the total fare they must pay," DOT presented no supporting evidence of consumer deception or confusion from the long-standing policy of disclosing most government charges separately from the quoted fare.[12]

Southwest – in both individual comments and as part of comments submitted by the Air Transport Association ("ATA"), which Southwest expressly "endorsed" – strongly objected to DOT's proposed policy reversal. Southwest stated that "with no evidence of consumer harm or complaints, DOT is now inexplicably proposing to completely reverse course and require carriers to include [all government charges] in advertised fares."[13] Southwest further pointed out that requiring airlines to "include government-imposed taxes and fees would make it

[10]71 Fed. Reg. 55,398, 55,401 (Sept. 22, 2006), Exhibit 7 hereto.

[11]75 Fed. Reg. 32,318, 32,327 (June 8, 2010), Exhibit 8 hereto.

[12]*Id.* at 32,328.

[13]Southwest Comments, Sept. 23, 2010, OST-2010-0140-1951, at 8, Ex. 9 hereto.

much more difficult for carriers to advertise specific prices due to variations in routings and corresponding discrepancies in tax levels," and that "it would be impossible for carriers to advertise a single accurate price to cover all possible itineraries."[14]  ATA's comments asserted, among other things, that DOT's "sudden about face on the issue of the separate listing of [government] taxes and fees . . . cannot be squared with the First Amendment protections accorded to truthful, non-deceptive commercial speech."[15]

On April 18, 2011, DOT issued a final rule that rejected or ignored the airlines' objections and adopted the Full Fare Advertising Rule as proposed, establishing an effective date of October 24, 2011.[16]

On July 8, 2011, Southwest requested that DOT stay the effective date of the Full Fare Advertising Rule pending judicial review.[17]  By letter dated July 20, 2011, DOT denied this request.[18]  Among other things, DOT stated that "a stay is not warranted" because – in response to requests from "other interested parties"[19] –

---

[14]*Id*. at 9.

[15]ATA Comments, Sept. 23, 2010, OST-2010-0140-1881, at 47-48 & n. 102, Ex. 10.

[16]The Rule was published April 25, 2011, 76 Fed. Reg. 23,110, Exhibit 1 hereto.

[17]Letter to DOT, July 8, 2011, Exhibit 2 hereto.

[18]Letter from DOT, July 20, 2011, Exhibit 3 hereto.

[19]*See, e.g.* "Request To Clarify The Final Rule And To Extend Certain Effective Dates," ATA *et al*., OST-2010-0140-2056 (June 7, 2011), Exhibit 11 hereto.

DOT was "extending the effective date" of the Full Fare Advertising Rule for an additional three months – until January 24, 2012.[20]

Significantly, the fact that DOT has extended the Rule's effective date until January 24, 2012 in no way alleviates the need for a judicial stay. This case was only recently filed and neither briefing on the merits nor oral argument have been scheduled. It is therefore extremely unlikely that the Court will issue a decision on the merits of the challenge to the Rule prior to January 24, 2012. Moreover, as both the attached Declaration (Exhibit 4) and Supplemental Declaration (Exhibit 5) make clear, Southwest will need approximately five months of lead time to undertake the necessary complex technical changes, employee training, testing and trouble-shooting to comply with the new Rule, meaning that Southwest will need to begin that costly process by the end of August 2011 in order to meet an effective date of January 24, 2012. It is obvious that a Court decision will not be issued by that time.

## LEGAL STANDARD

The decision to issue a stay is based on consideration of the following four factors: (i) the likelihood of success on the merits, (ii) the prospect of irreparable injury if the status quo is maintained, (iii) the possibility of harm to other parties if

---

[20]Exhibit 3, at 1.

relief is granted, and (iv) the public interest. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977).

## ARGUMENT

### I. THE AIRLINES ARE LIKELY TO SUCCEED IN THEIR CHALLENGE TO THE FULL FARE ADVERTISING RULE.

There is a significant likelihood that the airlines will succeed on the merits of their challenge to the Full Fare Advertising Rule.

#### A. The Rule Is Arbitrary And Capricious Because It Reverses Long-Standing Agency Policy Based Solely On Unfounded Speculation and Conjecture.

Under the APA, 5 U.S.C. 706, an agency's action is arbitrary and capricious unless it is supported by evidence and a reasoned explanation: the agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 41, 43 (1983) (internal quotation marks omitted). In reviewing an agency decision under the APA, a court will "not defer to the agency's conclusory or unsupported suppositions." *United Tech. Corp. v. DOD*, 601 F.3d 557, 562 (D.C. Cir. 2010) (citation and internal quotation marks omitted). In addition, DOT fact-finding must be supported by substantial evidence. 49 U.S.C. 46110.

Furthermore, an agency's decision to reverse a long-standing policy must be supported by "a reasoned explanation . . . for disregarding facts and circumstances

that underlay or were engendered by the prior policy," and demonstrate "that there are good reasons for the new policy." *FCC v. Fox Television Stations*, __ U.S. __, 129 S. Ct. 1800, 1811 (2009); *see also Nat'l Cable & Telecomm. Ass'n v. FCC*, 567 F.3d 659, 667 (D.C. Cir. 2009) ("agency action must . . . offer a reasoned basis for its departure from precedent") (internal quotation marks omitted); *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970), *cert. denied*, 403 U.S. 923 (1971).

Rather than offer tangible (much less substantial) evidence and the reasoned explanation required by law for reversing its decades-long price advertising policy, DOT relied entirely on speculation and conjecture that consumers are being deceived or confused by the airlines' long-standing practice of listing most government charges separately from the advertised air fare.  DOT cited only conclusory statements and a general summary of the public comments posted in the "Regulation Room," http://www.regulationroom.org—an experimental online forum for public feedback regarding proposed federal rules.[21]  The Regulation Room sought comments on the Rule with a misleading and biased "prompt" that referred to "ticket buyers [being] fooled by fees and charges hidden in the fine print," and erroneously suggested that the decades-old DOT-approved policy of separately disclosing most government taxes and fees was recently "developed" by

---

[21]*See* 76 Fed. Reg. at 23,110, Exhibit 1.

the airlines to "violate the spirit of" 14 C.F.R. 399.84.[22]  In addition, the vast majority of the 2,100 comments submitted to the DOT docket related to peanut allergies and other issues, and not to fare advertising.  Of the six individual commenters who suggested that airline price displays are confusing or misleading, only two specifically pointed to the exclusion of taxes as the source of their frustration.  No comments discussed actual episodes of being deceived.  Given that almost 800 million passengers fly annually in the United States,[23] such a smattering of individual comments does not constitute meaningful, much less substantial, evidence of consumer confusion or deception.

DOT's July 20, 2011 denial of Southwest's stay repeated the same speculation and conjecture in the Rule regarding consumer confusion.[24]  DOT also asserted that since 2007 there has been an "increase in enforcement orders concerning advertising."[25]  A general increase in enforcement orders relating to advertising was not part of the rulemaking record and, in any event, has no bearing on whether consumers are deceived or confused by the existing policy.  If

---

[22]http://regulationroom.org/airline-passenger-rights/fare-advertising-and-practices/#1

[23]*See* Final Regulatory Analysis, DOT-OST-2010-0140-2046, at 15 (April 8, 2011).

[24]*See* Exhibit 3 hereto, at 3-4.

[25]*Id.* at 4.

anything, it may simply reflect a more aggressive enforcement policy or an increase in enforcement personnel.

In its final rule, DOT claimed that "[s]ellers are now marketing air transportation through a variety of methods that they were not using" in 2006, such as "Facebook and . . . Twitter feeds directed solely to advertising sale fares."[26] However, DOT offered zero evidence that the advertising of airline tickets through such social-networking media has so drastically changed the marketing of air travel that the "compelling" reasons DOT touted five years ago for maintaining the status quo should now be disregarded.[27]

Reversal of long-established policies based on such conjecture and speculation is arbitrary and capricious. *See, e.g., Am. Fed'n of Labor & Congress of Indus. Orgs. v. Brock*, 835 F.2d 912, 918-20 (D.C. Cir. 1987) (arbitrary and capricious for agency to alter decades-old policy based on "sparse discussion in the Federal Register"); *Bluewater Network v. Salazar*, 721 F. Supp. 2d 7, 22 (D.D.C. 2010) (rule reversing ban on personal watercraft in national parks was arbitrary

---

[26]*See* 76 Fed. Reg. at 23,143, Exhibit 1.

[27]*See* 71 Fed. Reg. at 55,401, Exhibit 7.

and capricious where agency provided no reasoned explanation for the policy change).[28]

The new Rule is also arbitrary and capricious because it requires that truthful and non-misleading information regarding government-charges be stated, if at all, in fine print: Government charges "included within the single total price . . . may be stated separately or through links or 'pop ups' on websites that display the total price," but *such information* "*may not be displayed prominently . . . .*"[29]   Further, DOT mandated that while the tax and fee information may be "display[ed] . . . on the same page in fine print," it must be in "*significantly smaller type than the listing of the total price*" for the air transportation.[30]   These restrictions  interfere with Southwest's right to inform consumers of the tax burden on their air travel purchase as well as consumers' rights to receive that highly-relevant information. Courts must be "especially skeptical of regulations [of indisputably non-misleading information] that seek to keep people in the dark for what the government perceives to be their own good." *Pearson v. Shalala*, 164 F.3d 650, 656 (D.C. Cir. 1999) (citation and internal quotation marks omitted).

---

[28]Even assuming that consumer comments referenced in the final Rule supported DOT's finding of confusion, DOT violated the APA by failing to provide the airlines with prior notice of any such evidence, preventing them from addressing the purported consumer-confusion issue before the comment period closed.

[29]76 Fed. Reg. at 23,166, Exhibit 1 (emphasis added).

[30]*Id.* at 23,143 (emphasis added).

**B.     The Full Fare Advertising Rule Violates The First Amendment Because It Unnecessarily Restricts Truthful Commercial Speech.**

The Full Fare Advertising Rule violates the airlines' First Amendment right to free speech.   Under DOT's decades-old price advertising policy, airlines are providing truthful, non-deceptive information regarding the amount of applicable government-imposed taxes and fees before consumers purchase their tickets.  The new Rule not only bans the DOT-approved practice of airlines separately disclosing most government charges, but also prohibits airlines from informing consumers of government taxes and fees in a conspicuous way that will enable them to easily see and understand that important information.  (76 Fed. Reg. at 23,166, 23,143, Exhibit 1)

Truthful, non-deceptive advertising related to lawful activities is entitled to First Amendment protection as "commercial speech."  *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council*, 425 U.S. 748, 765 (1976).   DOT, as the party seeking to restrict such commercial speech, "carries the burden of justifying" the restriction.  *Edenfield v. Fane*, 507 U.S. 761, 770 (1993).  "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."  *Id.* at 770-71.  In addition, deference to agency action is inappropriate when it "raise[s] serious questions of constitutional law."  *Rust v. Sullivan*, 500

U.S. 173, 190-91 (1991); *Chamber of Commerce v. FEC*, 69 F.3d 600, 605 (D.C. Cir. 1995)).

In order for the new Rule to pass muster under the First Amendment it must: (1) directly advance the government interest involved—meaning it cannot provide only ineffective or remote support for the government's purpose; and (2) be no more restrictive than necessary to achieve the government's purpose. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 563-64 (1980). The Rule fails both tests.

*First*, the agency record contains no evidence that the new restrictions are necessary to advance directly the government's stated purpose of preventing consumer deception and confusion. DOT's unsupported finding, that consumers are being "deceived" by the long-standing price advertising policy,[31] is exactly the sort of "rote invocation of the words 'potentially misleading'" that is insufficient to support a free-speech restriction. *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 146 (1994).

Under the current policy, airlines already disclose government-imposed charges prominently and proximately to advertised air fares. *See* 76 Fed. Reg. at 23,142 (stating that DOT has permitted separate listings provided the "existence and amount [of taxes and fees] are clearly indicated in the advertisement so that the

---

[31] 76 Fed. Reg. at 23,142-43, Exhibit 1.

consumer can determine the full price to be paid"). Consumers therefore already receive the information they need to understand the ticket's total cost, including government taxes and fees. DOT's new speculation that some consumers might be deceived by the long-established policy is entirely insufficient to support restrictions on truthful, protected speech. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 497 (1996) (the government's "paternalistic assumption that the public will use truthful, nonmisleading commercial information unwisely cannot justify a decision to suppress it") (Op. of Stevens, J., joined by Kennedy and Ginsburg, J.J.). DOT's assumption of consumer confusion is hypothetical and too speculative to support restrictions on protected speech. *See Pearson,* 164 F.3d at 656-57 (FDA's conclusory assertions failed to justify the restriction on protected speech in connection with nutritional supplements); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1237 (10th Cir. 1999) (FCC improperly "relie[d] on speculation that harm to privacy and competition" would result absent restriction on telecomm marketing activities).

*Second*, the Rule's restrictions are far more extensive than necessary to achieve the government's purpose. "Narrow tailoring means that the government's speech restriction must signify a careful calculation of the costs and benefits associated with the burden on speech imposed by its prohibition." *U.S. West,* 182 F.3d at 1238 (citation and internal quotation marks omitted). It was incumbent on

DOT to consider whether the airlines' practice under the current policy of disclosing applicable government charges separately is sufficient to negate what DOT claims is confusing or deceiving consumers. *Pearson v. Shalala*, 164 F.3d at 658. Yet there is no evidence that DOT engaged in such a "careful calculation" of the costs and benefits before scrapping the 25-year-old policy. Nor did DOT consider whether the current policy, or some altered version of it – short of an outright ban on excluding government charges from quoted fares – could achieve the government's purpose. *See Novartis Corp. v. FTC*, 223 F.3d 783, 789 (D.C. Cir. 2000) ("if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive"); *Washington Legal Found. v. Friedman*, 13 F. Supp. 2d 51, 73 (D.D.C. 1998) (FDA guidance document that restricted how drug manufacturers use textbook and journal reprints and educational seminars to promote off-label uses for prescription drugs violated the *Central Hudson* test because "there exist less-burdensome alternatives to [the government's] restriction").

## II.   SOUTHWEST AIRLINES WILL BE SIGNIFICANTLY AND IRREPARABLY HARMED IF THE FULL FARE ADVERTISING RULE IS NOT STAYED.

To begin with, irreparable harm to Southwest should be presumed based on the likelihood that the Full Fare Advertising Rule violates the First Amendment. "The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Chapl. of Full Gosp. Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006); *Cmty. Comm'ns Co. v. Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981) ("irreparably injury is presumed" from First Amendment violation).

In addition, without a stay Southwest will suffer significant and irreparable financial harm. (Ridley Decl., Ex. 4, ¶¶ 3-11) Compliance with the Full Fare Advertising Rule will cause Southwest to lose up to $30 million from (1) one-time costs for changes in information-technology ("IT"), including an major overhaul of Southwest's reservation and ticket-distribution channels, website and mobile applications systems, airport-based kiosk systems, and frequent flyer program; and (2) foregoing  previously-planned, revenue-generating initiatives due to the diversion of the company's finite technology resources. (*Id.* ¶¶ 4, 6, 11)  More specifically, Southwest will be incur:

- $4.6 million in IT costs to redesign southwest.com and other Southwest internet-based platforms;

- $1.4 million in IT costs to redesign airtran.com and related platforms; and

- $18 million to $24 million in lost revenue by delaying, for at least three months, the implementation of critical, revenue-generating projects due to the diversion of limited technology resources. (*Id*. ¶ 6)

This estimate is conservative: it does not reflect (a) training costs for the frontline Southwest and AirTran employees who must understand the Rule; (b) marketing costs associated with educating customers about how the Rule will

affect advertised prices; and (c) the costs Southwest will bear in transitioning back to its industry-leading, consumer-friendly methods for pricing and advertising if the Rule is ultimately set aside.  (*Id.*)

The Rule will also require wholesale changes to Southwest's re-designed "Rapid Rewards" frequent-flyer program, which allows customers to earn points based on the amount they spend on Southwest air fares (*i.e.*, the fares displayed on southwest.com that exclude most government taxes and fees).  (*Id.* ¶ 8)

In addition, including all government-imposed fees and taxes in advertised fares will make it very difficult for Southwest to advertise prices in specific city-pair markets due to variations in possible routings and corresponding discrepancies in applicable tax levels.  (*Id.* ¶ 9)   For most of Southwest's "origination and destination" markets, it will be impossible to advertise a single accurate price to cover all possible itineraries between the origin and destination points.  (*Id.*)[32]

This substantial financial harm Southwest will suffer is irreparable because it cannot be recovered even if this Court vacates the Full Fare Advertising Rule. Economic harm may qualify as irreparable if the movant's "alleged damages are unrecoverable."  *Sterling Comm'l Credit – Mich., LLC v. Phoenix Indus. I, LLC*, 762 F. Supp. 2d 8, 16 (D.D.C. 2011); s*ee also Smoking Everywhere, Inc. v. FDA*,

---

[32]In denying Southwest's request for a stay (Exhibit 3), DOT failed to rebut Southwest's showing that it will lose up to $30 million if forced to comply with the new Rule, with no chance for recovery even if the Rule is set aside.

680 F. Supp. 2d 62, 77 n.19 (D.D.C. 2010) (unrecoverable economic harm is irreparable *per se*); *Nalco Co. v. EPA,* No. 11-760, 2011 WL 1882397, at *10 (D.D.C. May 18, 2011) (economic harm irreparable because no available recourse).

## III.   THERE IS NO COUNTERVAILING HARM IF THE STATUS QUO IS MAINTAINED PENDING THE OUTCOME OF <u>THIS COURT'S REVIEW</u>.

In stark contrast to the irreparable harm that Southwest will suffer if the Rule is not stayed, no harm will befall any other party if the status quo is maintained pending judicial review.  The DOT rulemaking record contains no evidence that the Rule is necessary to prevent consumer deception or confusion, and DOT's assumption that consumers will save time because of the new Rule has been shown to be "unsupported and therefore unreliable."[33]  Moreover, given that, since 1985, DOT has repeatedly reaffirmed the public benefits of its long-standing policy of allowing airlines to list government charges separately, there is no basis for concluding that consumers would be harmed by a stay.

---

[33]"Declaration of Darryl Jenkins," July 8, 2011, at 5; and "Negative Consumer & Economic Impact of EAPP-2 DOT Consumer Regulations," American Aviation Inst., July 8, 2011 (at 2-4) (Exhibits to Petitioners' Motion for Stay).

## IV.   THE PUBLIC INTEREST SUPPORTS MAINTENANCE OF THE STATUS QUO.

The public interest will be served by a stay of the Full Fare Advertising Rule.  An immediate reversal of DOT's 25-year-old advertising policy, causing all taxes and fees to be incorporated into advertised prices, will cause confusion and create the mis-impression that airlines have raised fares.  Moreover, if this Court were to invalidate the new Rule—*after* it has become effective and the airlines have spent millions in compliance costs—airlines will be free to return to their previous advertising practices, causing even more consumer confusion due to the whipsawing of changes in air-fare advertising and promotion.

## CONCLUSION

For the reasons set forth above, Southwest respectfully requests that this Court stay the effective date of the Full Fare Advertising Rule until after the Court decides the merits of the airlines' challenges to the Rule.

Respectfully submitted:


/s/ M. Roy Goldberg_____          /s/ Robert W. Kneisley_____
M. Roy Goldberg                         Robert W. Kneisley
(D.C. Bar No. 416953)                   (D.C. Bar. No. 366959)
Sheppard Mullin Richter &               Associate General Counsel
Hampton LLP                             Southwest Airlines Co.
1300 I Street, N.W., 11th Floor East    1901 L Street, N.W., Suite 640
Washington, D.C. 20005                  Washington, D.C. 20036
Tel. (202) 218-0007                     Tel. (202) 263-6284
Fax (202) 312-9425                      Fax (202) 263-6291
rgoldberg@sheppardmullin.com            bob.kneisley@wnco.com
Counsel for Movant Southwest            Counsel for Movant Southwest
Airlines Co.                            Airlines Co.

Dated: July 22, 2011

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 22, 2011, using the appellate CM/ECF system, I electronically caused to be filed with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit Southwest Airlines Co.'s Motion for Stay.  Participants in the case are registered CM/ECF users and service will be accomplished by the Appellate CM/ECF system.


/s/ Roy Goldberg_____
Roy Goldberg

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
———————————————————————

**No. 11-1219 (Consolidated with No. 11-1222)**
———————————————————————

SPIRIT AIRLINES, INC., *et al.*,

*Petitioners*,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,

*Respondent.*
———————————————————————————————

## SOUTHWEST AIRLINES CO. CERTIFICATE OF COUNSEL AS TO PARTIES, RULINGS, AND RELATED CASES
———————————————————————————————

As required by D.C. Circuit Rules 27(a)(4) and 28(a)(1), counsel for prospective intervenor Southwest Airlines Co. ("Southwest") certify as follows:

1.    **Parties and *Amici*.**  The following is a list of all parties, intervenors, and *amici* who, to counsel's knowledge, have appeared in this case:

a.    Petitioner Spirit Airlines, Inc.

b.    Petitioner Allegiant Air, LLC.

c.    Respondent U.S. Department of Transportation ("DOT")

d.    Prospective intervenor Southwest Airlines Co., on behalf of itself and its wholly-owned subsidiary, AirTran Airways, Inc.

  e.  Prospective intervenor the American Society of Travel Agents.

Counsel is not aware of any party that has sought leave to participate as *amicus curiae*.

**2.**   **Rulings Under Review.** The rulings under review in this Court are certain portions of a DOT final rule entitled "Enhancing Airline Passenger Protections," issued April 18, 2011 in Docket No. DOT-OST-2010-0140, and published in 76 Fed. Reg. 23,110 (April 25, 2011).

**3.**   **Related Cases.** Counsel are not aware of any other related cases.

Dated: July 22, 2011

        Respectfully submitted:

/s/ M. Roy Goldberg_____  /s/ Robert W. Kneisley_____
M. Roy Goldberg       Robert W. Kneisley
(D.C. Bar No. 416953)     (D.C. Bar. No. 366959)
Sheppard Mullin Richter &    Associate General Counsel
Hampton LLP        Southwest Airlines Co.
1300 I Street, N.W., 11th Floor East 1901 L Street, N.W., Suite 640
Washington, D.C. 20005    Washington, D.C. 20036
Tel. (202) 218-0007     Tel. (202) 263-6284
Fax (202) 312-9425     Fax (202) 263-6291
rgoldberg@sheppardmullin.com  bob.kneisley@wnco.com
Counsel for Movant Southwest   Counsel for Movant Southwest
Airlines Co.        Airlines Co.

Dated: July 22, 2011

## <u>SOUTHWEST AIRLINES CO.'S RULE 26.1 DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, movant Southwest

Airlines Co. ("Southwest")  states that it has no parent company, and no publicly-

held company has a ten percent or greater ownership interest in Southwest.


/s/ M. Roy Goldberg_____          /s/ Robert W. Kneisley_____
M. Roy Goldberg                         Robert W. Kneisley
(D.C. Bar No. 416953)                   (D.C. Bar. No. 366959)
Sheppard Mullin Richter &               Associate General Counsel
Hampton LLP                             Southwest Airlines Co.
1300 I Street, N.W., 11th Floor East    1901 L Street, N.W., Suite 640
Washington, D.C. 20005                  Washington, D.C. 20036
Tel. (202) 218-0007                     Tel. (202) 263-6284
Fax (202) 312-9425                      Fax (202) 263-6291
rgoldberg@sheppardmullin.com            bob.kneisley@wnco.com
Counsel for Movant Southwest            Counsel for Movant Southwest
Airlines Co.                            Airlines Co.

Dated: July 22, 2011

<u>CERTIFICATE OF SERVICE</u>

I certify that on July 22, 2011, using the appellate CM/ECF system, I electronically caused the above document to be filed with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit. Participants in the case are registered CM/ECF users and service will be accomplished by the Appellate CM/ECF system.

/s/ Roy Goldberg_____
Roy Goldberg